IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| W. Hugh Hicklin, III and Joyce Hicklin, | ) | C/A No. 5:17-cv-03463-SAL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| State Farm Fire and Casualty Company, | ) | |
| State Farm | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the court is a motion for summary judgment filed by Defendant State Farm Fire and Casualty Company ("State Farm") as to all claims asserted by Plaintiffs W. Hugh Hicklin, III ("Plaintiff Hugh Hicklin") and Joyce Hicklin ("Plaintiff Joyce Hicklin") (together "Plaintiffs"). [ECF No. 30.] The dispute surrounds the payment of insurance benefits following a fire at the insured property.

Plaintiffs filed suit in the South Carolina Court of Common Pleas for Orangeburg County, alleging three causes of action: (1) breach of contract; (2) bad faith refusal to pay insurance benefits; and (3) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). [ECF No. 1-1.] All of Plaintiffs' claims relate to State Farm's purported refusal to pay benefits under the insurance policy. [ECF No. 1-1, Am. Compl., at ¶¶ 7, 8, 10, 12.] State Farm removed the action to this court on December 27, 2017, on the basis of diversity jurisdiction, 28 U.S.C. § 1332. [ECF No. 1.] On March 26, 2019, State Farm filed the motion that is the subject of this Order. [ECF No. 30.] Plaintiffs filed a response [ECF No. 34], and State Farm filed a reply [ECF No. 35]. The court heard argument on February 18, 2020, and the matter is now ripe for resolution.

For the reasons outlined herein, the court finds that there is no genuine dispute as to any material fact, and State Farm is entitled to judgment as a matter of law on all claims.

**BACKGROUND AND UNDISPUTED FACTS**

Plaintiff Joyce Hicklin owns a rental property located at 592 Bennett Street, Orangeburg, South Carolina (the "property"), which is insured by State Farm under policy number 99-BS-16189-1 (the "policy"). On December 5, 2014, the property sustained fire damage. On December 8, 2014, State Farm sent a claim representative, Shawndell Matthews, to inspect the property. Four days after the inspection, Plaintiff Joyce Hicklin engaged a public adjuster, Timothy J. Pegelow of Goodman-Gable-Gould/Adjusters International, to assist in the adjustment of her claim. By letter dated December 12, 2014, Mr. Pegelow informed State Farm of his engagement by Plaintiff Joyce Hicklin and of her intent to pursue replacement cost coverage, if available under the policy.

**1. January 2015 Payment of Actual Cash Value Benefits.**

By letter dated January 9, 2015, Ms. Matthews sent Plaintiff Joyce Hicklin a check in the amount of $36,731.25, along with an estimate of the costs of repairs. The letter provides that State Farm is "paying [the] claim based on the cost of repairs with deduction for depreciation." It further states that the policy includes replacement cost coverage, which "provides for payment of the actual, necessary cost of making repairs to your dwelling without any deduction for depreciation." But the "policy requires that repairs be completed before replacement benefits may be claimed." The letter also explains that an "additional amount of $24,838.86 is available . . . for replacement cost benefits and may be claimed upon completion of the repairs." Finally, the letter instructs

Plaintiffs to contact State Farm if they obtain their own estimate for repairs that exceeds the estimate prepared by State Farm.[1]  The letter includes Ms. Matthews's phone and fax numbers.

Upon receipt of the $36,731.25 check, Plaintiffs placed it in a "box."[2]  Plaintiffs did not inform State Farm that they were not going to cash the check, nor did Plaintiffs undertake to repair the property with the funds.[3]  Rather, both Plaintiffs testified that they were not going to undertake to repair the property with only the actual chase value portion of the funds.  Plaintiff Joyce Hicklin testified as follows:

> Q  Why didn't you cash the check?
>
> A  Because I -- it was not enough to pay for the -- for repairing the house, so I didn't see any need in starting off with that amount.

[ECF No. 30-5, Dep. of J. Hicklin, at 35:6–9.]  Plaintiff Hugh Hicklin's testimony is similar:

> Q  Why did you not cash the check?
>
> A  Because it didn't meet up to the required funds needed to fix the house, and I'm not going to start on a pilgrimage of fixing a house with partial funds.

[ECF No. 30-4, Dep. of H. Hicklin, at 56:20–24.]

---

[1] The "Structural Damage Claim Policy" and "Explanation of Building Replacement Cost Benefits" similarly instruct that if a higher estimate is received or the insured cannot have the property repaired for the estimate amount provided by State Farm, the insured should contact the claim representative.  [ECF No. 30-4, Hicklin SF 278; Hicklin SFD 281.]  There is no evidence in the record indicating that Plaintiffs submitted alternative estimates to State Farm or otherwise informed State Farm that they could not begin or complete the repairs for the estimated amount.

[2] Plaintiff Joyce Hicklin testified that she "put [the check] in the file box with the other . . . information that [Plaintiffs] were gathering."  [ECF No. 30-5, Dep. of J. Hicklin, at 34:15–18*; see also* ECF No. 30-4, Dep. of H. Hicklin, at 56:13–19 ("Q Okay. What did you do with [the check]? A Put it in a box. Didn't cash it.").]

[3] In Plaintiffs' Response to the motion, they reference two invoices—one for $775.00 and another for $150.00—that were produced to State Farm during the course of discovery.  [ECF No. 34 at p.6.] The record lacks any evidence of Plaintiffs' submission of the invoices to State Farm for reimbursement in accordance with the terms of the policy.

## 2. February 4, 2015 Letter and Subsequent Estimates.

In a letter dated February 4, 2015, Ms. Matthews writes to Plaintiff Joyce Hicklin regarding a January 28, 2015 conversation with Plaintiff Hugh Hicklin. The letter reconfirms the January 9, 2015 "detailed estimate for the repairs to [Plaintiff Joyce Hicklin's] rental dwelling property" and the "actual cash value payment." [ECF No. 30-4, Hicklin SF 272.] The letter notes that Plaintiff Hugh Hicklin advised State Farm that Plaintiffs were in the process of seeking "a detailed comparative estimate from [their] own contract of choice." Ms. Matthews reminds Plaintiff Joyce Hicklin that she may recover loss of rents under a provision in the policy, but that recovery is based on the period of restoration, starting from the time State Farm issued the actual cash value payment. In this case, State Farm estimated 2.5 months for restoration.

Thereafter, Plaintiffs obtain three additional estimates: (1) January 5, 2015 estimate by Atlantic Estimating, LLC; $77,230.78 "replacement cost value" [ECF No. 34-4]; (2) June 20, 2017 F.E. Gaskins, Jr., General Contractor, Inc. quote[4] for cost of repair quote, totaling $85,683.00 [ECF No. 34-7]; and (3) an undated Atlantic Estimating, LLC estimate, totaling $81,055.82 [ECF No. 30-3].[5] Plaintiffs fail to identify any correspondence evidencing their submission of the "comparative estimate[s]" to State Farm.[6] Moreover, there is no evidence that Plaintiffs accepted one of the above-listed estimates and began repairs to the property.

Plaintiffs ultimately filed suit in the Orangeburg County Court of Common Pleas in November 2017, alleging State Farm refused to pay insurance benefits. [ECF No. 1-1.] During the course of

---

[4] Plaintiffs do not dispute that the June 20, 2017 F.E. Gaskins, Jr. quote includes repairs beyond the scope of the fire damage. [ECF No. 30-6, Dep. of T. Pegelow, at 126:13–25; 130:20–23; 135:5–136:16; 138:2–25.]

[5] The third estimate is referenced in Plaintiffs' Supplemental Answers to State Farm's Interrogatories, but neither the date of the estimate nor a copy of the estimate appear in the record.

[6] Plaintiff Hugh Hicklin testified affirmatively that the June 20, 2017 F.E. Gaskins, Jr. quote was not provided to State Farm. [ECF No. 30-4, Dep. of H. Hicklin, at 75:3–10.]

the litigation, State Farm sent a second claim representative, Deanna Hadjuk, to inspect the property. At that time, Ms. Hadjuk estimated a replacement cost value of $72,201.02, and an actual cash value of $45,896.31. [ECF No. 34-8.] The difference between Ms. Matthews's January 2015 estimate and Ms. Hadjuk's February 2018 estimate is $8,165.06. On March 4, 2019, State Farm issued a check for $81,65.06. [ECF No. 30-7.]

## 3. Replacement Cost Benefits, Lawsuit, and Motion.

It is undisputed that Plaintiffs did not accept an estimate and undertake repairs to the property. Based on the record before this court, it is further undisputed that Plaintiffs never submitted a claim for any purported additional actual cash value benefits or for the $24,838.86 in replacement cost benefits. Almost three years after the fire, Plaintiffs filed suit against State Farm for refusal to pay insurance benefits. State Farm moved for summary judgment on all claims.

State Farm argues it is entitled to summary judgment on the breach of contract claim because Plaintiffs are seeking replacement cost benefits, and it is not required to pay replacement cost benefits where the insured fails to accomplish the repairs within two years of the date of the loss. For this same reason, State Farm claims it had a reasonable ground upon which to base its handling of the claim and, therefore, is entitled to judgment as a matter of law on the claim for bad faith refusal to pay insurance benefits. And, finally, State Farm argues the SCUTPA claim fails because insurance practices are exempt from the SCUTPA, there is no evidence of an impact on the public interest, and State Farm's handling of the claim does not constitute unfair or deceptive acts as a matter of law.

In response, Plaintiffs argue that the dispute before the court is whether State Farm paid an unreasonably low actual cash value payment. According to Plaintiffs, there is a genuine dispute of material fact over whether the check in the amount of $36,731.25 was a reasonable actual cash

value payment. Plaintiffs further argue that they should not be bound by the two-year provision in the policy because Plaintiffs were not advised of its existence.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323.

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## DISCUSSION

### 1. Breach of Contract.

In the Amended Complaint, Plaintiffs allege that State Farm "breached the contract by *refusing* to pay her[sic] insurance benefits under the contract, proximately causing their damages." [ECF No. 1-1, Am. Compl. at ¶ 8 (emphasis added).] According to State Farm, it paid what was owed under the terms of the policy and, therefore, it is entitled to judgment in its favor. Plaintiffs, in response to summary judgment, set forth a new theory: that the subsequent estimates give rise to a genuine dispute of material fact regarding whether the $36,731.25 actual cash value payment was reasonable. [ECF No. 34 at pp.5 ("A rational juror could determine that defendant breached the contract as they did not pay a reasonable ACV until after suit was filed."); 6 ("Because there was a binding insurance contract, defendants breached the contract by issuing an unreasonable ACV payment and plaintiff suffered damages, defendant[sic] motion for summary judgment should be denied.").] After careful review of the arguments, the insurance contract at issue, the evidence in the record, and the relevant case law, the court finds that there is no genuine dispute as to any material fact, and State Farm is entitled to judgment as a matter of law on the breach of contract cause of action.

### A. Two-year provision and equitable estoppel.

There is no dispute that the terms of the insurance policy govern what benefits are due to Plaintiffs. The forms constituting the policy include FP-8103.3 and various endorsements, including the Rental Dwelling Endorsement, FE-5610. State Farm contends that a provision in

FP-8103.3, as amended by FE-5610,[7] is relevant to the breach of contract analysis. Plaintiffs do not offer any alternative policy language for the court's consideration.

FP-8103.3 provides that for "Buildings under Coverage A," "[c]overed property losses are settled . . . at replacement cost without deduction for depreciation, subject to" four conditions. [ECF No. 30-2, State Farm Rental Dwelling Policy, FP-8103.3, Section I – Conditions, at p.8, ¶ 3.] The third condition provides that State Farm "will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed." [ECF No. 30-2, State Farm Rental Dwelling Policy, FP-8103.3, Section I – Conditions, at p.8, ¶ 3(c.)(3).] The fourth condition provides that the insured "may disregard the replacement cost loss settlement provisions and make a claim under this policy for loss or damage to buildings on an actual cash value basis and then make a claim within 180 days after loss for any additional liability on a replacement cost basis." *Id.* at 3(c.)(4). Conditions three and four are replaced by the following language in FE-5610:

> Until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the building, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the building;
>
> When the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the building, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less; and

---

[7] Again, Plaintiffs do not put forth any other applicable policy provision. They take issue, however, with the word "SAMPLE" that appears at the top of the copy of FE-5610 produced by State Farm. [ECF No. 34 at p.8 ("defendants have been unable to produce a copy of the endorsement issued to Joyce Hicklin without the word "SAMPLE").] Plaintiffs fail to put forth any case law or argument as to how the word "SAMPLE" would impact State Farm's reliance on or consideration of FE-5610. The "objection" to the court's consideration of FE-5610 is conclusory and unsupported and, thus, denied.

> To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the building within two years after the date of the loss, and notify us within 30 days after the work has been completed.

[ECF No. 30-2, FE-5610 Rental Dwelling Policy Endorsement, Section I – Conditions.] The conditions provide that State Farm will only pay the actual cash value at the time of the loss "[u]ntil actual repair or replacement is completed." *Id.* In order for the insured to receive any payments beyond the actual cash value payment at the time of the loss, the actual repair or replacement must be completed in two years. *Id.*

Based on the foregoing conditions and the undisputed fact that Plaintiffs did not complete the repair or replacement of the damaged building within two years of the date of the loss, State Farm argues it is entitled to judgment as a matter of law. Plaintiffs counter that State Farm should be estopped from relying on the two-year provision. [ECF No. 34 at p.5.] According to Plaintiffs, State Farm did not notify them of the two-year provision and, therefore, they were unaware that it existed. Plaintiffs' estoppel argument is unavailing.

First, Plaintiffs did not plead a theory of estoppel in the Amended Complaint and, therefore, cannot raise it for the first time on summary judgment. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"); *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992) (recognizing "a party is generally not permitted to raise a new claim in response to a motion for summary judgment"). Second, there is a general rule in South Carolina that "[u]nder no conditions can the coverage or *restrictions on coverage* be extended by waiver or estoppel." *Campbell, Inc. v. Northern Ins. Co. of N.Y.*, 337 F. Supp. 2d 764, 769 (D.S.C. 2004) (citing *Pitts v. New York Life Ins. Co.*, 148 S.E.2d 369, 371 (S.C. 1966) (emphasis added)). The claim of

equitable estoppel, even if properly asserted in the Amended Complaint, "cannot stand as a matter of law." *Advanced Pain Therapies, LLC v. Hartford Fin. Servs. Group, Inc.*, No. 3:14-cv-00050, 2014 WL 4402800, at *5 (D.S.C. Sept. 3, 2014).

Third, even if Plaintiffs were able to overcome the pleading and legal insufficiency issues, they have not met their burden to show a genuine issue for trial. "The essential elements of estoppel as related to the party estopped are: (1) conduct that amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are other than, and inconsistent with, those that the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts." *Southern Development Land and Golf Co. v. South Carolina Pub. Serv. Auth.*, 426 S.E.2d 748, 750 (S.C. 1993). "The elements of equitable estoppel for the party asserting the estoppel are the following: (1) a lack of knowledge and of a means of knowing the truth as to the facts in question; (2) a reliance upon the conduct of the estoped party; and (3) a prejudicial change in position." *Dozier v. American Red Cross*, 768 S.E.2d 222, 291 (S.C. Ct. App. 2014). Plaintiffs, as the "part[ies] asserting estoppel carr[y] the burden of proof." *Id.* Plaintiffs fail to address any of the four elements "related to the party estopped." As to those four elements, suffice it to say that Plaintiffs have not come forward with any evidence that would support a finding that the factors are present in this case.

And, while Plaintiffs cursorily address the elements as to the "party asserting the estoppel," the court finds that the evidence submitted is insufficient to avoid summary judgment. As to the first element, "lack of knowledge," Plaintiffs make the blanket allegation that they were unaware of the two-year provision in the policy and State Farm "did not notify them of the provision."

[ECF No. 34 at p.5.]  Yet, "[i]t is well settled in South Carolina that an insured has the duty of reading his insurance policy and of acquainting himself with its contents."  *Lewis v. Omni Indemnity Co.*, 970 F. Supp. 2d 437, 449 (D.S.C. 2013); *see also Walpole v. Great American Ins. Companies*, 914 F. Supp. 1283, 1291 (D.S.C. 1994) ("An insured has a duty to read the policy he purchases and to abide by its plain terms.").  Failure to read the policy prevents the insured "from avoiding the contract on the grounds that he did not know its terms."  *Lewis*, 970 F. Supp. 2d at 449.  Thus, as a matter of law, State Farm did not have a duty to notify Plaintiffs of the existence of the two-year provision in the policy.[8]

As to the second element, "reliance upon the conduct of the estopped party," Plaintiffs have not presented any evidence of conduct by State Farm on which they relied in failing to effectuate the repairs within the two-year period.  As outlined above, Plaintiffs testified that they were not going to start repairs to the property with only the "partial" payment, *i.e.*, actual cash value payment, from State Farm.  That decision was independent of any action or inaction by State Farm.  And, finally, Plaintiffs have not set forth any evidence of the third element, "prejudicial change of position."  Plaintiffs' position, based on their own deposition testimony, was that they were not going to repair the property without full payment of replacement cost benefits.  There was absolutely no change of position by Plaintiffs, let alone a prejudicial one.  Where, as here, "there is no evidence of conduct warranting estoppel," summary judgment is appropriate.  *Regions Bank v. Schmauch*, 582 S.E.2d 432, 446 (S.C. Ct. App. 2003); *Doe v. Northwestern Mut. Life Ins. Co.*,

---

[8] The court notes that Plaintiff Joyce Hicklin's public adjuster, Mr. Pegelow, had a copy of the policy, including FE-5610, in his possession. [ECF No. 30-6, Dep. of T. Pegelow, at 49:4–14; *see also* Hicklin – GGG Sub Resp – 145 (evidencing and Mr. Pegelow's highlighting and underlining of two-year provision with note, "RCV w/in 2 years . . . .").]  Mr. Pegelow acknowledged reading, highlighting, and underlining the provision.  *Id.*

No. 2:10-cv-2961, 2012 WL 2405510, at *6 (D.S.C. June 26, 2012) (relying on general rule that estoppel cannot extend coverage and granting summary judgment on equitable estoppel claim where there the plaintiff "failed to provide any evidence that defendant misled plaintiff about the existence of coverage under the policies").

## B. Constructive amendment.

In addition to the theory of estoppel, Plaintiffs argue summary judgment on the breach of contract cause of action should be denied because there is evidence in the record to create a genuine dispute of material fact regarding whether the actual cash value payment was unreasonably low. This argument represents a disconnect between Plaintiffs' theory set forth in the Amended Complaint and their theory in response to summary judgment.

In the Amended Complaint, Plaintiffs alleges that State Farm *refused* to pay benefits due under the insurance contract—not that State Farm issued an *unreasonable* payment. *See Snowden v. United Rentals (N. Am.) Inc.*, No. 2:14-cv-2740, 2015 WL 5554337, at *4 (D.S.C. Sept. 21, 2015) (noting disconnect in theories and granting judgment as a matter of law on the "breach of contract claim that [plaintiff] actually pled"). Specifically, the Amended Complaint alleges:

> 5. That plaintiffs purchased a homeowners insurance policy from defendants[sic], namely Policy Number 99-BS-6189-1 . . . which provided coverage including, but not limited to, coverage for their dwelling, other structures, personal property, and loss of use, for their dwelling located at 592 Bennett Street in Orangeburg South Carolina. Plaintiffs paid to defendant all applicable insurance premiums.

> 6. That the dwelling incurred substantial fire damage on December 05, 2014, and plaintiff timely reported the damage to defendant, claim number 40-5L57-722.

> 7. That defendant willfully, recklessly, and in bad faith refused to pay benefits under the Policy to plaintiff for the Fire damage.

[ECF No. 1-1, Am. Compl. at ¶¶ 5–7.] During depositions, Plaintiffs testified in line with the

theory set forth in the Amended Complaint:

> Q And if you look near the bottom, it says "The estimate to repair or replace your damaged property is $62,070." Is it your opinion that State Farm should have just sent you a check for $62,070 even if you hadn't done the repairs? Is that what you're saying?
>
> A I think they should have sent the check for 62 so that we could have done the repairs.
>
> Q I see. So what you're saying is that rather than sending you and your husband an actual cash value payment of $36,731, and telling you that the remaining $24,838 would be sent when you do the repairs, State Farm, just off the bat, should have just sent you $62,070; right?
>
> A To do the repairs.
>
> Q All right. That's what you wanted; right?
>
> A. Right.
>
> Q Did you ever tell anybody at State Farm that is what you expected?
>
> A No.

[ECF No. 30-5, Dep. of J. Hicklin, at 43:19–44:12.]

> Q And it's your testimony that until you came into this deposition today, you did not have a clear understanding that to get a payment beyond the actual cash value basis, you needed to actually do the repairs?
>
> A Right.
>
> Q Okay. Do you understand it now?
>
> A I understand it now.

[ECF No. 30-4, Dep. of H. Hicklin, at 61:21–62:3.]

Q Did you ever tell State Farm that because 36,731 was not itself enough to pay for the repairs, that you were going to have to raise your own funds to do the repairs beyond that, that you weren't going to cash the check? Did you ever tell State Farm that?

A No.

*Id.* at 76:18–23.  In light of the foregoing testimony, State Farm moved for summary judgment on the breach of contract claim, arguing the claim fails because Plaintiffs were seeking replacement cost benefits to which they are not entitled under the terms of the policy.  It was not until Plaintiffs filed the Response to the motion that Plaintiffs began arguing that the breach was the issuance of an *unreasonable* actual cash value payment.  [ECF No. 34 at pp.5, 6.][9]

Given the allegations in the pleading and the deposition testimony in the record, it appears Plaintiffs are attempting to constructively amend the Amended Complaint to assert a new breach of contract theory.  The court declines to allow such an amendment.  The discovery period in this case ended before the parties began summary judgment briefing.  "Allowing a constructive amendment at this late stage would unfairly prejudice [the moving party] and undermine the fairness of the proceedings."  *Snowden*, 2015 WL 5554337, at *4; *see also Harris v. Reston Hosp. Center, LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) ("We conclude that the district court did not err in refusing to consider the new argument as an impermissible attempt to constructively amend the complaint.").  Because the court is declining to allow a constructive amendment of the pleading, it is considering summary judgment on the claim actually pleaded by Plaintiffs.

---

[9] Both Plaintiffs testified during their depositions that, having read the applicable policy provision, they then understood why State Farm did not send full replacement cost benefits at the outset. [ECF No. 30-5, Dep. of J. Hicklin, at 48:11–20; ECF No. 30-4, Dep. of H. Hicklin, at 61:21–62:3.]

To determine whether Plaintiffs were entitled to replacement cost benefits when State Farm issued the actual cash value payment, the court must look to the terms of the policy. In South Carolina, "[i]nsurance policies are subject to the general rules of contract construction." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire and Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003). "An insurance contract is read as a whole document so that 'one may not, by pointing out a single sentence or clause, create an ambiguity.'" *Id.* (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 348 (S.C. 1976)). "The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." *State Farm Fire and Cas. Co. v. Morningstar Consultants, Inc.*, No. 6:16-cv-01685, 2017 WL 2265919, at *2 (D.S.C. May 24, 2017) (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 349 (S.C. 1976)). "When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense." *C.A.N. Enters., Inc. v. South Carolina Health & Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988). "Where a motion for summary judgment presents a question concerning the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous." *Moss v. Porter Bros., Inc.*, 357 S.E.2d 25, 27 (S.C. Ct. App. 1987).

The applicable policy provision states that "[u]ntil actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the building." [ECF No. 30-2, FE-5610 Rental Dwelling Policy Endorsement, Section I – Conditions.] "When

the repair or replacement is actually completed," State Farm pays the "covered additional amount [the insured] actually and necessarily spend to repair or replace the damaged part of building." *Id.* The court finds that this policy language is plain and unambiguous. *See Hess v. North Pacific Ins. Co.*, 859 P.2d 586 (Wash. 1993) (construing similar policy language; "We hold that the policy at issue is not ambiguous; its conditions plainly limit recovery to actual cash value under these facts."). Under the plain terms of the policy, Plaintiffs were not entitled to replacement cost benefits at the time State Farm issued the payment for actual cash value. State Farm is entitled to judgment as a matter of law on the breach of contract claim pleaded by Plaintiffs.[10]

### C. "Reasonableness" and Actual Cash Value.

Even if this court were to allow the constructive amendment to assert a breach of contract claim based on the allegedly unreasonable actual cash value payment, Plaintiffs have not met their burden to survive summary judgment on the claim. Once State Farm came forward with evidence that it paid actual cash value on January 9, 2015, the burden shifted to Plaintiffs to come forward with "*specific facts* showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (emphasis added). Plaintiffs have not met their burden.

The parties have not presented, nor has the Court found, case law from South Carolina addressing a breach of contract claim based on the reasonableness of an actual cash value payment made in accordance with a replacement clause. Courts in other jurisdictions, however, have considered similar claims. In those cases, breach of contract claims related to actual cash value

---

[10] While the Amended Complaint claims State Farm "breached the contract by refusing to pay her insurance benefits under the contract," ECF No. 1-1, Am. Compl. at ¶ 8, the court notes that there is no evidence in the record showing that Plaintiffs ever submitted a claim for replacement cost benefits that were thereafter "refused" by State Farm.

payments generally fall into three categories: (1) disputes as to the reasonableness of the payment where the insurer receives competing estimates *before* issuance of an actual cash value payment;[11] (2) disputes as to whether an insurer has a contractual obligation to supplement an actual cash

---

[11] In *Truesdell v. State Farm Fire & Casualty Company*, 960 F. Supp. 1511 (N.D. Okla. 1997), the court found a genuine dispute of material fact existed as to the reasonableness of an actual cash value payment and a replacement cost value estimate where the insurer *received and considered* three separate estimates *before* it issued an actual cash value payment to the insureds. Without explanation, the insured selected and issued payment based on the "second highest of the three bids it received." *Id.* at 1521. The mortgagee-insured returned the actual cash value payment to the insurer, claiming the "amount tendered would not enable the [insured-mortgagor] to repair their residence." *Id.* at 1514. The parties "continued to negotiate regarding the proper estimate for repair" until the insureds filed the lawsuit. *Id.* There, much like here, there was no question that the insureds were not entitled to replacement cost benefits because they had not repaired the property. *See id.* at 1517 ("Allowing the insured to recover replacement cost with no intention of replacing or repairing the damaged property would disregard the risk limiting nature of insurance contracts."). The court denied the insurer's motion for summary judgment on the breach of contract claim, however, finding that the three estimates considered by the insured gave rise to a genuine dispute of material fact as to whether the "calculations of the repair costs and the actual cash value of the . . . residence were reasonable." *Id.* at 1520. In this case, there is no evidence in the record that State Farm received competing estimates before it issued the actual cash value payment to Plaintiffs. Notably, there is no evidence in the record that State Farm ever received a competing estimate from Plaintiffs.

value payment upon receipt of a corrected[12] or competing estimate;[13] and (3) disputes regarding

---

[12] In *Beck v. Metropolitan Property & Casualty Insurance Company*, No. 3:13-cv-00879, 2015 WL 4112343 (D. Or. July 6, 2015), the court considered whether an insurer properly paid actual cash value when it issued payment based on the lower of its own two estimates. Immediately after inspecting the property, the insurer estimated an actual cash value payment of $348,036.34. *Id.* at *2. Just two days later, the insurer increased its estimate to include an actual cash value payment of $349,899.54. *Id.* The insurer thereafter tendered payment to the insured based "only on" the first estimate. The insurer did not provide "a supplemental payment or otherwise provide[] additional compensation for [the] loss." *Id.* Both parties moved for summary judgment on the breach of contract claim. In granting summary judgment in favor of the insured, the court found that the fact the insurer "unilaterally and without prompting, increased the estimated value of [the] home," "shows the First [] Estimate was inaccurate." *Id.* at *6. The court found that "basing its payment on an inaccurate ACV would not yield a payment which would fulfill [the insurer's] obligations under the Policy." *Id.* The court concluded that the failure to pay an increased actual cash value payment based on the second estimate was the breach of the policy. *Id.* at *7 (noting no matter which ACV figure the insurer "generated over the period of time between" when the first estimate was revised and the conclusion of discovery in the case, there was no genuine dispute of material fact that the first payment was inadequate under the policy). The facts before this court are different. While State Farm performed another inspection of the property, it was three years after the first estimate. The court in *Beck* found that the insurer knew it paid an inaccurate actual cash value amount, given that it unilaterally increased the estimate just two days after issuance of the first estimate. The breach was the refusal to pay the amount of the insurer's own increased estimate. Here, there is no evidence in the record that State Farm knew the January 2015 payment or estimate was somehow "inaccurate." Further, there is no evidence that State Farm increased its own estimate and then refused to pay the increased figure. The February 2018 payment in this case is not in line with the facts of *Beck*.

[13] In *Matchniff v. Great Northwestern Insurance Company*, 224 F. Supp. 3d 1119 (D. Or. 2016), the court denied cross-motions for summary judgment on a breach of contract claim. There, the insurer paid the insured an actual cash value payment in accordance with its first estimate. Six months later, the *insurer* obtained a second estimate with a replacement cost value $50,000 higher than the original estimate, but without a corresponding actual cash value figure. Six months after the second estimate, the insureds filed suit alleging the insurer should have supplemented its actual cash value payment and its failure to do so was a breach of the policy. During the course of the litigation, the *insurer* obtained two additional estimates, both of which included actual cash values. In analyzing the breach of contract question, the court noted that the insureds failed to "identify the relevant language of the Policy that required defendant to supplement its ACV payment when it obtained higher estimates" and that they failed to notify the insurer "of their intent to disregard the functional replacement cost provisions" and seek only actual cash value. *Id.* at 1124. An additional complicating factor in *Matchniff* was the Rule 30(b)(6) testimony of one of the insurer's own witnesses. The witness testified that the insurer breached the policy by failing to supplement the actual cash value payment. *Id.* at 1125. The court held that "[w]hether defendant designated or authorized [the deponent] to discuss the issue of ACV payments is a genuine issue of material fact. *Id. Matchniff* differs from the undisputed facts before this court. Plaintiffs' testimony in this case is that they wanted full replacement cost benefits and, therefore, had no intent to disregard

the calculation and application of deprecation when actual cash value is undefined in the policy.[14]

The first two categories share a common theme: the insurer is on notice of conflicting estimates of the actual cash value payment before the lawsuit is filed. The third category goes to whether there is an ambiguity in the policy regarding the valuation of depreciation—an issue that is not before this court. Regardless, the undisputed facts of this case do not fit neatly into any of the three above-listed categories.

The court is presented with the scenario in which an insured receives an actual cash value payment from the insurer, but refuses to cash the check or otherwise inform the insurer of her dissatisfaction with the amount of the payment. The record lacks any evidence indicating that the insured submitted an alternative or competing estimate to the insurer before the actual cash value payment was made. And, there is no evidence that the insured obtained a higher estimate, submitted the same to the insurer with a request for additional actual cash value funds, and was denied an increased payment. Finally, there is no challenge to the calculation of or application of depreciation applied by the insurer.

---

the replacement cost provision and seek only actual cash value. Further, there is no evidence that State Farm obtained any additional estimates, failed to supplement based on the updated estimates, or that the failure to supplement was what prevented Plaintiffs from contracting for repairs to the property.

[14] *See, e.g., Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297, 1304 (S.D. Ala. 2017) ("As applied to this case, to prevail on the instant motion the defendant must show that the undefined term 'actual cash value' could not reasonably be construed by a reasonable insured, lacking special knowledge or expertise and applying the ordinary meaning of the Policy language, as not including depreciation of labor costs."); *Boss v. Travelers Home & Marine Ins. Co.*, No. 2:16-cv-04065, 2016 WL 3983833, at *8–*9 (W.D. Mo. July 25, 2016) (assessing whether insurer was permitted to depreciate labor to calculate actual cash value); *Mitchell v. State Farm Fire & Cas. Co.*, 335 F. Supp. 3d 847 (N.D. Miss. 2018) (considering competing positions in Rule 12(b)(6) briefing as to whether labor costs are depreciable in calculating actual cash value).

The record lacks any evidence that Plaintiffs informed State Farm of their "belief" that the actual cash value payment was too low or that they could not find a contractor to complete the work for the amount outlined in State Farm's estimate. The correspondence in the record informed Plaintiffs that if they received a higher estimate, or if they could not have the property repaired for the amount estimated by State Farm, the insured should contact the claim representative. [ECF No. 30-4, Hicklin SF 278; Hicklin SFD 281.][15] Further, the February 4, 2015 letter from Ms. Matthews recognized Plaintiffs' ability to obtain a comparative estimate and submit it to State Farm. [ECF No. 30-4, Hicklin SF 272.] Plaintiff Joyce Hicklin agreed that she could have contacted Ms. Matthews, but chose not to do so. Accordingly, the three subsequent estimates, without any evidence that they were ever submitted to or rejected by State Farm, do not create a genuine issue for trial as to whether State Farm paid benefits due under the contract.

**2. Bad Faith Refusal to Pay Insurance Benefits.**

The reasons supporting summary judgment in favor of State Farm on the breach of contract claim also support summary judgment in its favor on the bad faith claim. "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Collins v. Auto-Owners Ins. Co.*, 759 F. Supp. 2d 728, 739 (D.S.C. 2010) (citing *Nichols v. State Farm Mut. Auto Ins. Co.*, 306 S.E.2d 616, 619 (S.C. 1983)). "The elements of a bad faith refusal to pay action are: (1) the existence of a contract of insurance between the parties; (2) refusal by

---

[15] The policy also includes an appraisal provision, providing that when the insured and the insurer fail to agree on the amount of the loss, either can demand that the amount be set by appraisal. [ECF No. 30-2, State Farm Rental Dwelling Policy, FP-8103.3, Section I – Conditions, at p.8, ¶ 6; see also ECF No. 30-6, Dep. of T. Pegelow, at 106:7–10 ("Q Okay. Was State Farm within its rights to pay actual cash value until the damage is actually repaired? A Yes.").]

the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action; and (4) causing damage to the insured." *Id.* (citing *Howard v. State Farm Mut. Auto Ins. Co.*, 450 S.E.2d 582, 586 (S.C. 1994)). But, when there is a reasonable basis to support the insurer's decision, summary judgment is appropriate. *See Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 594 S.E.2d 455, 462 (S.C. 2004); *Watson v. Foremost Signature Ins. Co.*, No. 2:13-cv-301, 2014 WL 130424, at *2 (D.S.C. Jan. 14, 2014) (granting summary judgment in favor of insured on bad faith claim where "[n]othing in the record suggests . . . anything other than a good-faith dispute about the extent of coverage").

In this case, the record is devoid of evidence of a "denial" of a claim or a "refusal" by State Farm to pay benefits due under the contract. State Farm accepted the claim, inspected the property, and sent Plaintiffs a check for the actual cash value. Additionally, Plaintiffs were not entitled to replacement cost benefits under the plain terms of the policy and, therefore, State Farm necessarily had a good faith basis for only paying the actual cash value. Plaintiffs' reliance on the three subsequent estimates does not change the court's conclusion. Three higher estimates do not serve as evidence of "bad faith or unreasonable action" by State Farm in issuing its estimate or the actual cash value payment. The court finds that based on the evidence in the record, no reasonable juror could find that State Farm had "no reasonable basis" to support its handling of the claim. *See Toney ex rel. Toney v. Ability Ins. Co.*, No. 3:10-cv-2311, 2014 WL 4403295, at *4 (D.S.C. Sept. 21, 2011) (granting summary judgment on bad faith claim for same reasons as breach of contract claim).

### 3. SCUTPA.

Plaintiffs' final cause of action is for alleged violation of the SCUTPA. State Farm contends that the claim is precluded because the alleged conduct complained of is exempt from coverage under the SCUTPA, S.C. Code Ann. § 39-5-40(c), the suit does not impact the public interest, and the handling of the claim, as a matter of law, does not constitute an unfair or deceptive act. The court agrees that the SCUTPA claim is precluded and that summary judgment is appropriate.[16]

This court has consistently recognized that the SCUTPA, specifically S.C. Code Ann. § 39-5-40(c), exempts from coverage all unfair trade practices regarding the business of insurance. *See, e.g., Trustees of Grace Reformed Episcopal Church v. Charleston Ins. Co.*, 868 F. Supp. 128, 132 (D.S.C. 1994) (granting summary judgment on SCUTPA claim); *Whitehead v. Travelers Indemnity Co. of Am.*, No. 3:15-cv-04200, 2016 WL 5920857, at *2 (D.S.C. Oct. 11, 2016) (granting summary judgment and finding "no reason why Plaintiff's SCUTPA violation claim here is not subject to the rule stated in *Grace Reformed*"); *Thomas v. Tramaine-Frost*, No. 4:16-cv-1266, 2017 WL 9287004, at *5 (D.S.C. Jan. 12, 2017) (dismissing SCUTPA claim because the "SCTUPA does not create a private right of action against insurers"). This case is no different. State Farm is entitled to judgment as a matter of law.

---

[16] Having found that the SCUTPA claim is precluded, the court elects not to consider State Farm's additional arguments on the SCUTPA claim. Further, Plaintiffs' counsel agreed during the hearing that the SCUTPA is precluded.

## CONCLUSION

For the foregoing reasons, Defendant State Farm Fire and Casualty's Motion for Summary Judgment [30] is **GRANTED** in its entirety. Defendant State Farm Fire and Casualty's Motion in Limine [41] is **DENIED** as moot.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

March 13, 2020
Florence, South Carolina